**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**RAND AMROCK,**

                      Plaintiff,

              v.                                                  3:12-CV-55
                                                                           (FJS)

**CAROLYN W. COLVIN, Acting Commissioner
of Social Security,**

                      Defendant.

---

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **LACHMAN & GORTON**<br>1500 East Main Street<br>P.O. Box 89<br>Endicott, New York 13761-0089<br>Attorneys for Plaintiff | **PETER A GORTON, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF REGIONAL GENERAL<br>COUNSEL - REGION II**<br>26 Federal Plaza   Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **KRISTINA D. COHN, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 12-13.

## II. BACKGROUND

On February 17, 2009, Plaintiff filed an application for Supplemental Security Income benefits, a period of disability, and disability insurance under Title XVI and Title II of the Social Security Act, respectively. *See* Dkt. No. 9, Administrative Record ("AR") at 201-06. The Social Security Administration denied these applications by Notice of Disapproved Claim, dated April 14, 2009. *See id.* at 82-91. On June 1, 2009, Plaintiff filed a timely request for a hearing before an Administrative Law Judge to challenge the denial. *See id.* at 92.

On August 19, 2010, Plaintiff appeared *pro se* in Binghamton, New York, and had a video hearing before Administrative Law Judge ("ALJ") Jeffrey M. Jordan, who conducted the hearing from Baltimore, Maryland. *See id.* at 61-62. Also present were Nancy Hayward, a vocational expert, and Lorraine Perez, a hearing monitor. *See id.* at 61. By decision dated September 9, 2010, the ALJ denied Plaintiff's application for a period of disability, disability insurance, and Supplemental Security income benefits. *See id.* at 22-36. In reaching his decision, the ALJ made the following findings:

> 1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. Plaintiff had not engaged in substantial gainful activity since January 1, 2004, the alleged onset date.
>
> 3. Plaintiff had the following severe impairments: disorder of the back, affective disorder, and substance use disorder.
>
> 4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5. Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and

>   416.967(c) except that Plaintiff would be limited to simple, routine, low stress tasks.
>
>   6. Plaintiff was capable of performing past relevant work as a housekeeper. Such work does not require the performance of work-related activities that Plaintiff's RFC would preclude.

*See* AR at 27-32.

Based on these findings, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2004, through the date of the ALJ's decision, September 9, 2010. *See* AR at 33.

By letter dated October 6, 2010, Plaintiff made a timely request by certified mail to the Appeals Council of the Social Security Administration to review the ALJ's decision. *See id.* at 18-21. At that time, Plaintiff submitted a Representative Brief, dated October 6, 2010, and the "Mental Statement" of Jeanette Lee, Nurse Practitioner, dated November 9, 2010, as additional evidence. *See id.* at 4. By Notice of Appeals Council Action dated December 15, 2011, the Appeals Council denied Plaintiff's request for review. *See id.* at 1-5.

Having exhausted her administrative remedies, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) of the Social Security Act, seeking review of Defendant's final decision. *See* Dkt. No. 1. In support of her motion for judgment on the pleadings, Plaintiff argued that (1) the ALJ erred by not fully developing the record, (2) the ALJ erred in his assessment of Plaintiff's credibility, and (3) the new evidence that Plaintiff submitted to the Appeals Council required reversal or remand of the ALJ's decision.

**III. DISCUSSION**

**A.    Standard of review**

*1. Correct legal principles and substantial evidence*

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). In reviewing an ALJ's decision, the court employs a two-prong test. First, the court must decide if the ALJ applied the correct legal principles. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation and other citation omitted).

The court must determine whether the ALJ applied the correct legal standards because

> [w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Accordingly, the court will not uphold an ALJ's decision if it is based on an erroneous view of the law. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983).

If the court determines that the ALJ applied the correct legal principles, the court must then decide whether "substantial evidence" supports the ALJ's findings. *See Johnson*, 817 F.2d at 985 (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" is evidence that amounts to "'more than a mere scintilla,'" defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 128 (1938)). Where evidence is deemed susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (citations omitted). If there is substantial evidence to support the ALJ's findings, the court must sustain those findings "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citations omitted); *see also Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) (citations omitted). In other words, the court must afford the ALJ's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

### 2. *Five-step determination of disability*

To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). In addition, a claimant's

> [p]hysical or mental impairment or impairments [must be] of such

-5-

> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work. . . .

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In evaluating disability claims, the ALJ follows a five-step sequential evaluation process:

> First, the [ALJ] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [ALJ] next
> considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant
> has an impairment which is listed in Appendix 1 of the regulations.
> If the claimant has such an impairment, the [ALJ] will consider
> him disabled without considering vocational factors such as age,
> education, and work experience[.] . . . Assuming the claimant does
> not have a listed impairment, the fourth inquiry is whether despite
> the claimant's severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the claimant is
> unable to perform his past work, the [ALJ] then determines
> whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920.

"[T]he claimant bears the burden of proving disability at the first four steps." *Berry*, 675 F.2d at 467. If the claimant meets his burden, then the Commissioner has the burden of proof at the fifth step. *See id.*

**B.    Whether the ALJ erred in his duty to develop the record**

In light of the remedial purpose underlying the Social Security Act and the non-adversarial nature of the administrative proceedings, an ALJ is under an obligation not only to

develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B) (as incorporated by 42 U.S.C. § 1382c(a)(3)(G)); 20 C.F.R. § 416.912(d)); *see also Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (citations omitted). "Accordingly, 'an ALJ may not rely, as factfinders in adversarial proceedings customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him.'" *Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 450 (S.D.N.Y. 2004) (quoting *Thomas*, 2002 WL 31433606, at *4).

In furtherance of his duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to permit a reasoned disability determination and additional information is needed to resolve the question. *See Crysler v. Astrue*, 563 F. Supp. 2d 418, 432 (N.D.N.Y. 2008) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). This affirmative obligation is present even when counsel represents the claimant. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47)) (citing *Pratts*, 94 F.3d at 37). Ultimately, "'[i]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) (quotation omitted).

Nonetheless, the affirmative duty imposed on an ALJ to develop an administrative record fully is not without limits. *See Miller v. Astrue*, No. 7:11-cv-631, 2012 WL 3061949, *3 (N.D.N.Y. July 26, 2012) (citing *Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3

(N.D.N.Y. June 14, 2010)). The ALJ's duty to make every reasonable effort does not require him "to obtain every medical file from every medical source the claimant has seen," but rather, he "must request additional evidence if the administrative record does not contain sufficient evidence to make a fair determination[.]" *Ubiles v. Astrue*, No. 11-CV-6340T, 2012 WL 2572772, *10 (W.D.N.Y. July 2, 2012) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); *see also Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 345 n.7 (E.D.N.Y. 2010). The duty to re-contact treating medical sources to develop a record fully arises only when the ALJ cannot decide the issue of disability based on the existing evidence. *See Rosa*, 168 F.3d at 79 n.5 (citing *Perez*, 77 F.3d at 48).

In this case, the ALJ adequately developed the record. Plaintiff argues that his hand tremors and arthritis were central to the validity of his claim. *See* Plaintiff's Brief at 14. Plaintiff, however, also stated that his physical condition did not prevent him from functioning, provided he was not exposed to steady sunlight. *See* AR at 31, 73-74. In addition, the ALJ noted that, although Plaintiff reported that he had constant tremors, the medical records from Broome County Mental Health showed no motor deficits including no tremors in both August 2008 and August 2010. *See id.* at 31. Moreover, Dr. Choi noted that Plaintiff's right middle finger had good strength and full range of motion. *See id.* at 366. Based on the completeness of the medical records regarding Plaintiff's hand tremors, it was not necessary for the ALJ to recontact treating medical sources.

Plaintiff also contends that the ALJ failed to elicit detailed testimony regarding how he performed his daily activities. *See* Plaintiff's Brief at 14. Plaintiff points to his written statements that he only shopped for groceries in "the dead of night" and his testimony regarding

his limited football game watching as instances where the ALJ failed to develop the record regarding how his mental impairments affected his daily living. *See id.* These arguments are without merit and rely on a significant distortion of the facts. In his written statement, Plaintiff clearly asserted that he shopped for groceries once per month and weekly for bread and milk. *See* AR at 242. No where in that statement did he indicate the time of day or night that he did his shopping. Moreover, Plaintiff testified that he watched a limited amount of football because he did not own a television and, due to his history of alcohol abuse, did not want to watch the game at a bar. *See id.* at 75. He never mentioned that the reason that he only watched a quarter of the game was because of his lack of concentration. The ALJ gathered a detailed record of Plaintiff's daily activities and hobbies, including listening to music, reading, and socializing. *See id.* at 74-76. Thus, the Court concludes that the ALJ adequately developed the record with regard to how Plaintiff's impairments affected his daily functioning.

Lastly, the ALJ was not required to recontact treating medical sources to determine additional details of the Psychiatric Review Technique and Mental Residual Functional Capacity assessment performed on January 10, 2010, because adequate information existed in the record for the ALJ to make a reasonable determination of disability. The reports of Dr. Lin and Nurse Practitioner Lee stated that Plaintiff was cooperative, had full affect, clear speech, normal motor activity, and was fully-oriented. *See id.* at 265, 349. Moreover, Dr. Long's assessment concluded that Plaintiff could follow and understand simple directions and instructions, could perform complex tasks independently, make appropriate decisions, and relate adequately with others. *See id.* at 301. Lastly, Dr. Inman-Dundon opined that Plaintiff could perform at least simple work.

*See id.* at 321.[1]

For the above-stated reasons, the Court concludes that the ALJ adequately developed the record and that there was no need for the ALJ to recontact medical sources.

**C.     Whether the ALJ erred in assessing Plaintiff's credibility**

It is the function of the ALJ, and not the courts, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. at 399, 91 S. Ct. at 1426) (other citations omitted). Although the ALJ need not resolve every conflict in the record, "'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983))) (other citations omitted).

In determining the credibility of the claimant's statements, the ALJ must consider the entire record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the claimant, and any other relevant evidence in the record. *See* SSR 96-7p, 1996 WL 374186, *1 (July 2, 1996).

---

[1] The fact that Dr. Inman-Dundon was a non-examining source does not mean that the ALJ could not rely on his opinion as part of the substantial evidence to support the ALJ's determination. *See Monguer v. Heckler*, 722 F.3d 1033, 1039 (2d Cir. 1983) (*per curiam*); SSR 96-6p, 1996 WL 374180, *1-*2 (July 2, 1996).

However, it is not "require[d] that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*) (citation omitted); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (rejecting argument that the ALJ must explicitly reconcile every shred of conflicting testimony); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (stating that "'an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered'" (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000))).

"The claimant's subjective complaints are an important element of the RFC calculus[.]" *Cornell v. Astrue*, 764 F. Supp. 2d 381, 399 (N.D.N.Y. 2010) (citing *Lewis v. Apfel*, 62 F. Supp. 648, 657-58 (N.D.N.Y. 1999)); *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted). However, "[s]ubjective symptomatology by itself cannot be the basis for a finding of disability." *Knighton v. Astrue*, 861 F. Supp. 2d 59, 68 (N.D.N.Y. 2012). A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p, 1996 WL 374186 (July 2, 1996); *Gernavage v. Shalala*, 882 F. Supp. 1413, 1420 n.7 (S.D.N.Y. 1995).

Although an ALJ "is required to take the claimant's reports of pain and other limitations into account," he is "not required to accept the claimant's subjective complaints without question[.]" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of

the other evidence in the record." *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)); *Mimms*, 750 F.2d at 186 (quotation omitted). If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief and whether there is substantial evidence to support his determination. *See Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir. 1984); *Valente*, 733 F.2d at 1045 (citations omitted). The ALJ may also find a claimant's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree. *See* SSR 96-7p, 1996 WL 374186, at *1.

One strong indicator of the claimant's credibility is its consistency, both internally and with other information in the record. *See id.* The ALJ must consider such factors as the degree to which the claimant's statements are consistent with the objective medical evidence, the consistency of the claimant's own statements, and the consistency of the claimant's statements with other information in the record. *See id.* However, lack of consistency between a claimant's statements and other statements that he has made at other times does not necessarily mean that the claimant's statements are not credible. *See id.*

Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the claimant does not always assert the same intensity, persistence, or functional effects of his symptoms. *See id.* Therefore, the ALJ must review the record to determine if there are any explanations for any variations in the claimant's statements about his symptoms and their effects. *See id.*

The regulations establish a two-step procedure for evaluating a claimant's contentions of

-12-

disability symptoms. *See* 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment [] that could reasonably be expected to produce" the level of pain or symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *1. Second, the ALJ must evaluate the intensity and persistence of the symptoms experienced, considering all of the available evidence and, in the event that the claimant's testimony about his pain is not substantiated by objective medical evidence, must engage in a credibility analysis. *See* 20 C.F.R. § 1529(c)(3); *Meadors v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010). In making that assessment, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; (5) other treatment that the claimant receives or has received for relief of his pain or other symptoms; (6) other measures the claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions resulting from his pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *Meadors*, 370 F. App'x at 186 n.1.

In this case, the ALJ properly evaluated Plaintiff's credibility. Plaintiff contends that the ALJ failed to consider several factors in assessing his credibility, including the location, duration, frequency, and duration of his symptoms; precipitating and aggravating factors; and side effects of medication. *See* Plaintiff's Brief at 17-21. The Court disagrees. In determining that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible in relation to his RFC, the ALJ relied on the medical findings, the assessments of the consultative examiner, the vocational expert's testimony, and Plaintiff's daily activities. *See* AR

-13-

at 31-32.

At the administrative hearing, the ALJ inquired into Plaintiff's ability to sit, stand, walk and lift. *See id.* at 76-77. After Plaintiff noted that he felt jittery after sitting for an extended period of time, the ALJ followed up to ascertain how long Plaintiff could remain sitting. *See id.* at 76. The ALJ also inquired about Plaintiff's social interactions at work. *See id.* at 74. Identifying social interaction as an aggravating factor of Plaintiff's bipolar disorder, the ALJ created a hypothetical that involved simple, routine, low stress tasks with brief, superficial contact with coworkers and the public. *See id.* at 78. Moreover, although Plaintiff asserts that the ALJ did not consider the side effects of Lithium, the ALJ inquired into Plaintiff's history of medication and their side effects at the administrative hearing.

Despite Plaintiff's mental health issues, he was found to have GAF scores of 65 to 66, which are indicative of mild symptoms but generally functioning well. *See id.* at 31. Dr. Long opined that Plaintiff could follow and understand simple directions and instructions and independently perform simple tasks. *See id.* at 301. She noted he could function well normally, maintain attention and concentration, and maintain a regular schedule; however, she also opined that Plaintiff's bipolar symptoms might disrupt these functions. *See id.* Despite Plaintiff's reported lack of socialization, it was Dr. Long's opinion that he could relate adequately with others. *See id.*

Furthermore, as part of a Medical Residual Functional Capacity Assessment, Dr. Inman-Dundon concluded that Plaintiff was able to follow and understand simple directions, perform simple tasks, maintain attention and concentration, learn new tasks, perform complex tasks, and make appropriate decisions. *See id.* at 321. Moreover, Dr. Inman-Dundon noted that Plaintiff

-14-

retained the ability to perform at least simple work not with the general public. *See id.* Additionally, Plaintiff reported that he provided for his own personal grooming, shopping, laundry, cleaning and cooking. *See id.* at 32. Plaintiff also stated that he listened to music, read autobiographies, and socialized with his brother and friend as hobbies. *See id.*

For all these reasons, the Court finds that there is substantial evidence in the record to support the ALJ's conclusion with regard to Plaintiff's credibility.

**D. Whether the new evidence that Plaintiff submitted to the Appeals Council requires reversal or remand of the ALJ's decision**

Section 404.970(a) of Title 20 of the Code of Federal Regulations provides that

> (a) the Appeals Council will review a case if
>
> (1) There appears to be an abuse of discretion by the administrative law judge;
> (2) There is an error of law;
> (3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
> (4) There is a broad policy or procedural issue that may affect the general public interest.

20 C.F.R. § 404.970(a).

This regulation further outlines how the Appeals Council considers new and material evidence.

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

-15-

20 C.F.R. § 404.970(b).

A claimant may "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). To warrant review of the "new and material evidence," the claimant must establish that "'the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.'" *Sergenton v. Barnhart*, 470 F. Supp. 2d 194, 204 (E.D.N.Y. 2007) (quoting *Lisa v. Sec'y of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991)). Evidence is "material" if there is "'a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently.'" *Id.* (quotation omitted).

The evidence in question is a questionnaire, dated November 9, 2010, that Nurse Practitioner Lee completed. Nurse Practitioner Lee opined that Plaintiff had extreme limitations in (1) performing activities within a schedule, maintaining regular attendance, and/or being punctual; (2) completing a normal work day and work week without interruptions from psychological-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) accepting instructions and responding appropriately to criticism from supervisors. *See* AR at 384-85. Moreover, Nurse Practitioner Lee concluded that Plaintiff had marked limitations in (1) maintaining attention and concentration for extended periods of time; (2) interacting appropriately with the general public; (3) getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (4) responding appropriately to ordinary stressors in the work setting. *See id.*

Although Nurse Practitioner Lee's opinion refers to the relevant time period, she is not a physician and, therefore, is not an acceptable medical source. *See* 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513(a). However, a nurse practitioner is recognized as an "other source" that can supply the ALJ and the Appeals Council with material evidence. Section 404.1513(d) provides, in pertinent part, that,

> [i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists) . . . .

20 C.F.R. § 404.1513(d).

The evidence that Plaintiff submitted to the Appeals Council is new insofar as Nurse Practitioner Lee's questionnaire referred to the subject period and indicated more limiting impairments than some of the other medical evidence. Although Plaintiff notes that Nurse Practitioner Lee's questionnaire agreed with S. Morey's evaluation, it is important to note that the ALJ gave the latter little weight. Second, although the evidence is relevant to Plaintiff's condition during the time period for which benefits were denied, there is not a reasonable possibility that this new evidence would have influenced the ALJ to decide Plaintiff's application differently. The new evidence is inconsistent with Nurse Practitioner Lee's own treatment notes and other medical evidence in the record. *See id.* at 265-66, 349, 384-86. Moreover, the ALJ noted that Plaintiff saw Nurse Practitioner Lee every six weeks. *See id.* at 30. Thus, there is no reasonable explanation for the late submission of this evaluation.

For all these reasons, the Court finds that the evidence that Plaintiff submitted to the Appeals Council does not require remand of the ALJ's decision.

### IV. CONCLUSION

After reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**, and Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2014
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge